# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| **DOREEN FRANCES PERKINS,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **CAUSE NO. 1:16-cv-00267-SLC** |
| | **)** | |
| **COMMISSIONER OF SOCIAL** | **)** | |
| **SECURITY,** *sued as Nancy A Berryhill,* | **)** | |
| *Acting Commissioner of Social Security,*[1] | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## OPINION AND ORDER

Plaintiff Doreen Frances Perkins appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB").[2]  For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

## I.  BACKGROUND

On September 27, 2013, Perkins filed an application for DIB, alleging disability as of January 10, 2008.  (DE 6 Administrative Record ("AR") 15, 212-13).  Perkins was last insured for purposes of DIB on December 31, 2014 (AR 22), and therefore, she must establish that she was disabled as of that date, *see Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that with respect to a DIB claim, a claimant must establish that she was disabled as

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, *see Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017), and thus, she is automatically substituted for Carolyn W. Colvin in this case, *see* Fed. R. Civ. P. 25(d).

[2] All parties have consented to the Magistrate Judge.  (DE 10); *see* 28 U.S.C. § 636(c).

of her date last insured in order to recover DIB). Perkins's application was denied initially and upon reconsideration. (AR 165-68, 170-72). At Perkins's request, a hearing was held before Administrative Law Judge Matthias Onderak (the "ALJ") on August 13, 2015. (AR 66-114, 175-76). At the hearing, Perkins, who was represented by an attorney, and vocational expert Charles McBee testified. (AR 67-68). On September 11, 2015, the ALJ issued an unfavorable decision, finding that Perkins was not disabled. (AR 17-38). Perkins requested that the Appeals Council review the ALJ's decision (AR 14-16), and the Appeals Council denied her request, making the ALJ's decision the final, appealable decision of the Commissioner (AR 1-4).

Perkins filed a complaint with this Court on July 11, 2016, seeking relief from the Commissioner's final decision. (DE 1). In her appeal, Perkins alleges that the ALJ: (1) failed to appropriately weigh the opinions of Ron Sloan, M.D., in assigning the residual functional capacity ("RFC"); and (2) failed to properly evaluate the credibility of Perkins's symptom testimony. (DE 9 at 14-20).

## II. THE ALJ's FINDINGS

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether Perkins is disabled as defined by the Act, the ALJ conducted the familiar five-step analytical process, which required him to consider the following issues in

2

sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id*. at 885-86.

At step one, the ALJ found that Perkins had not engaged in substantial gainful activity since her alleged onset date of October 12, 2012, through the date she was last insured, December 31, 2014. (AR 22). At step two, the ALJ found that Perkins had the following severe impairments: degenerative disc disease of the spine, fibromyalgia, obesity, and lung disease. (AR 22-24).

At step three, the ALJ concluded that Perkins did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 24). Before proceeding to step four, the ALJ determined that Perkins's symptom testimony was "not entirely credible" (AR 29), and assigned her the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work . . .
> except she can occasionally climb ramps or stairs but never climb
> ladders, ropes or scaffolding. She can occasionally be on flooring

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC, or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(5).

that is slick or uneven or otherwise requires balance. The claimant can occasionally stoop, kneel, crouch and crawl. She should avoid concentrated exposure to inordinate amounts of respiratory irritants, meaning inordinate amounts of fumes, odors, dust, gases, and areas of poor ventilation. For example, the claimant cannot work with levels of respiratory irritants similar to those found in chemical plants, automotive garages, coal[]mines, farms, or grain silos. She must avoid exposure to unprotected heights. The claimant must avoid concentrated exposure to dangerous or hazardous machinery, meaning machinery that has exposed moving parts used to cut or grind that fails to stop when human contact is lost or machinery that has open flames or hot surfaces that would burn someone if he or she fell onto them. She can ambulate with the use of one cane and is able to maintain balance while using her unoccupied upper extremity to lift/carry items.

(AR 24-25). Based on this RFC, the ALJ found at step four that Perkins could perform her past relevant work in data entry, and therefore, her application for DIB was denied. (AR 32).

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id*. Rather, if the findings of the Commissioner

are supported by substantial evidence, they are conclusive. *Id.* Nonetheless, "substantial

evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

(citing *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)).

## IV. ANALYSIS

Perkins claims that the ALJ erred in rejecting two of Dr. Sloan's reports in determining

the RFC: an examination report from June 24, 2014, and an examination report from July 28,

2015. The RFC is "the individual's maximum remaining ability to do sustained work activities

in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for

five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996); *see Young v. Barnhart*,

362 F.3d 995, 1000-02 (7th Cir. 2004) (citations omitted); 20 C.F.R. § 404.1545(a)(1) ("Your

[RFC] is the most you can still do despite your limitations."). The RFC assessment:

> is based upon consideration of all relevant evidence in the case
> record, including medical evidence and relevant nonmedical
> evidence, such as observations of lay witnesses of an individual's
> apparent symptomology, an individual's own statement of what he
> or she is able or unable to do, and many other factors that could
> help the adjudicator determine the most reasonable findings in
> light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545.

The Seventh Circuit Court of Appeals has stated that "more weight is generally given to

the opinion of a treating physician because of his greater familiarity with the claimant's

conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. §

404.1527(c)(2). Each medical opinion, other than a treating physician's opinion, must be

evaluated pursuant to factors articulated in 20 C.F.R. § 404.1527(c) to determine the proper

weight to apply to it. *See White v. Barnhart*, 415 F.3d 654, 658-60 (7th Cir. 2005). Whether the

doctor examined the claimant is one of the factors considered when weighing opinions under this

regulation. *Payne v. Colvin*, No. 4:15-CV-43-JVB-PRC, 2017 WL 655863, at *2 (N.D. Ind. Feb. 17, 2107) (citing 20 C.F.R. § 404.1527(c)(1)). "Medical opinions from examining sources are generally given more weight than those from non-examining sources." *Id.* (citing 20 C.F.R. § 404.1527(c)(1)). The Seventh Circuit Court of Appeals has stated that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citation omitted); *see Young v. Barnhart*, 362 F.3d 995, 1001-02 (7th Cir. 2004) (noting that the circumstance presented was "not a case where the ALJ improperly rejected an examining physician's opinion in favor of a non-examining physician's decision").

Dr. Sloan's June 24, 2014, report includes clinical findings that Perkins suffers from "low[er] back pain," radiating pain in her legs, and that she can stand for about 20 minutes at a time. (AR 1385). Dr. Sloan stated that on a scale of one to 10, Perkins's pain averages a four and can get up to an eight or a nine "when bad." (AR 1387). Dr. Sloan estimated that Perkins could sit for less than an hour and stand or walk for less than an hour in an eight-hour workday. (AR 1387). Dr. Sloan opined that it was necessary or recommended that Perkins not sit continuously in a work setting. (AR 1387). Dr. Sloan concluded that Perkins had "significant limitations in doing repetitive reach, handling, fingering or lifting," and he recorded "Marked (Essentially Precluded)" limitations in her ability to use her upper extremities in a competitive eight-hour workday. (AR 1388). Dr. Sloan opined that Perkins's symptoms would increase if she were placed in a competitive work environment; that she could not work at a competitive job, full time, on a sustained basis; that her symptoms would constantly interfere with her attention and concentration; and that she was not capable of even a "low stress" position. (AR

1389-91).

On July 28, 2015, Dr. Sloan examined Perkins again, diagnosing her with back pain, degenerative disc disorder, and fibromyalgia. (AR 1412). Dr. Sloan recorded the following clinical findings in support of these diagnoses: an MRI in March 2013 and a physical exam. (AR 1412). Dr. Sloan estimated that Perkins could perform a job in a seated position for two hours in an eight-hour work day, and that she could perform a job standing or walking for one hour in an eight-hour work day. (AR 1413). Dr. Sloan opined that Perkins could never or rarely lift 10 to 20 pounds, occasionally lift five to 10 pounds, never or rarely carry 10 to 20 pounds, occasionally carry five to 10 pounds, and frequently carry less than five pounds. (AR 1413). Dr. Sloan also opined that Perkins did not have significant limitations in reaching, handling, or fingering; she could never or rarely grasp, turn, or twist objects; never or rarely use her arms for reaching; and frequently use her hands or fingering for fine manipulations. (AR 1413).

The ALJ assigned "no weight" to Dr. Sloan's opinions, providing the following reasons for his determination: (1) Dr. Sloan's opinions "were conclusory in nature and without specificity"; (2) Dr. Sloan's July 2015 exam indicates that Perkins's condition improved since Dr. Sloan's June 2014 exam, which is inconsistent with other "objective record evidence"; (3) Dr. Sloan did not prescribe Perkins a wheelchair or see her on an emergency basis, "indicating her limitations [were] not as severe as Dr. Sloan's opinions indicate"; and (4) Dr. Sloan opined that Perkins could not sustain employment, which is an issue reserved to the ALJ. (AR 29-30).

The ALJ's first reason for discrediting Dr. Sloan's opinion—that is, Dr. Sloan's opinions were conclusory—is flawed. It is true that Dr. Sloan's reports of June 24, 2014, and July 28, 2015, do not contain much diagnostic or laboratory testing. However, Dr. Sloan did support his opinions with "physical exams" and "clinical findings" that Perkins has "low[er] back pain . . .

7

radiating pain [down] legs bilateral[ly] . . . [and] she can stand about 20 min[utes]." (AR 1385,

1412). The ALJ's conclusion that Dr. Sloan's opinions were "conclusory" despite these exams

and clinical findings "ignores the accepted notion that 'fibromyalgia often produce[s] pain and

other symptoms out of proportion to the objective medical evidence, [and therefore] it is crucial

that the disability adjudicator evaluate credibility with great care and a proper understanding of

the disease.'" *Buttaccio v. Berryhill*, No. 16 C 5447, 2017 WL 3895566, at *5 (N.D. Ill. Sept. 6,

2017) (alterations in original) (quoting *Robinson v. Berryhill*, No. 16 C 5152, 2017 WL 2215022,

at *3 (N.D. Ill. May 19, 2017)); *see Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017)

("[T]here are no laboratory tests to confirm the diagnosis." (alteration in original) (citation and

internal quotation marks omitted)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (finding

that the ALJ erred by "depreciated the gravity of [the claimant's] fibromyalgia because of the

lack of any evidence of objectively discernible symptoms, such as a swelling of the joints").

Second, according to the ALJ, the July 2015 report indicates that Perkins's condition

significantly improved since June 2014, which is "inconsistent with the objective record

evidence." (AR 30). However, it is not clear what "objective record evidence" the ALJ is

referring to. Indeed, the ALJ mentioned only two medical reports documenting Perkins's

condition between June 2014 and July 2015: a December 2014 report stating that a CT scan of

Perkins's chest showed that diffuse right-sided infiltrates had resolved (AR 29 (citing AR 1415)),

and a February 2015 report by Brian Zehr, M.D. (AR 30 (citing AR 1393-405)). However, the

December 2014 report does not discuss any functional limitations, and the ALJ assigned Dr.

Zehr's report "no weight." (AR 30). Therefore, the ALJ could not rely on these reports in

discrediting the functional limitations assigned in Dr. Sloan's reports.

The ALJ did not discuss, and the record appears to lack, any other "objective record

8

evidence" between June 2014 and July 2015. This leaves the Court to guess whether there is any

objective medical evidence that contradicts Dr. Sloan's reports between June 2014 and July 2015

that would support the ALJ's rejections of these reports. *See Betts v. Colvin*, No. 13-cv-6540,

2016 WL 1569414, at *3 (N.D. Ill. Apr. 19, 2016) (remanding the ALJ's decision where the ALJ

failed to articulate which medical records provided support for the assigned RFC, leaving the

court to guess where there was support for the RFC in the medical records or whether the ALJ

"fabricated [the RFC] out of whole cloth").

Moreover, medical evidence of record prior to the time period of June 2014 to July 2015

largely confirms Dr. Sloan's findings. For example, in October, November, and December 2012,

Kelly Anderson, N.P., assessed Perkins with multiple points of tenderness; pain with range of

motion in the lumber and/or cervical spine, shoulders, and/or hips; and positive straight-leg tests

bilaterally. (AR 1127, 1133, 1137-39). Social Security Regulations require "[a]t least 11

positive tender points on physical examination" to medically determine that a claimant has

fibromyalgia. SSR 12-2P, 2012 WL 3104869, at *3 (July 25, 2012). Additionally, Ajit Pai,

M.D., examined Perkins in March 2013 and found that she had "moderate tenderness in bilateral

posterior cervical area," an antalgic gait, and chronic low back pain. (AR 1323). Dr. Pai

examined Perkins again in April and May 2013, reiterating his findings from March and finding

positive straight-leg tests. (AR 1327, 1331). In June 2013, Dr. Pai described Perkins's

tenderness in her right cervical spine and right clavicle as "severe." (AR 1339). Dr. Sloan

examined Perkins in September 2013 and found that she had "18 out of 18 fibromyalgia points of

tenderness" through objective testing. (AR 893). Similarly, David Campbell, M.D., examined

Perkins on April 13, 2014, and found that she had "diffuse fibromyalgia trigger points in all

characteristic sites" and that she had decreased range of motion in her right shoulder and both

hips.  (AR 1378).

The Commissioner argues that the state agency physicians and the consultative examining physician assigned less restrictive functional limitations than Dr. Sloan, and that the ALJ was justified in rejecting Dr. Sloan's reports based on these physicians' opinions. The state agency physicians, who reviewed Perkins's record in November 2013 and February 2014, concluded that Perkins could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push or pull (including operations of hand or foot controls) an unlimited amount. (AR 147, 161).  Additionally, the state agency physicians opined that Perkins could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, or crawl.  (AR 148, 162).  The ALJ assigned these opinions "some weight" but found that other "objective evidence" warrant a reduction to sedentary work.  (AR 30-31).

Additionally, in October 2013, Abdall Jan, M.D., a consultative internal medicine physician, examined Perkins and found no muscle weakness, no muscle cramps, and no decreased range of motion.  (AR 1308).  Dr. Jan performed a physical exam, which revealed normal posture; four out of five strength bilaterally in all extremities; four out of five grip strength; muscle pain in her left hip with palpation; and tenderness to palpation in her lumbar spine.  (AR 1309).  She had a normal tandem walk, but was unable to heel/toe walk due to pain; and she used a cane.  (AR 1309).  Dr. Jan's "Medical Source Statement" reads:

> [Perkins] can step up 16 inches, she has normal fine motor skills
> with normal handling of fine objects. . . .  [S]he states that she has
> difficulties with walking, sitting and standing for prolonged
> periods of time; she states that she has bilateral knee pain, . . . she
> does use a cane to ambulate.

(AR 1310).

10

The problem with the Commissioner's argument is that the state agency physicians and Dr. Jan did not examine Perkins or evaluate her medical record during or close to the relevant time period of June 2014 to July 2015. Therefore, the ALJ could not have relied on these opinions in concluding that Dr. Sloan's reports of June 2014 and July 2015 were inconsistent with objective medical evidence of record.

Moreover, the state agency physicians did not examine Perkins. "[A] contradictory opinion of a non-examining physician does not, by itself," serve as a basis to "reject an examining physician's opinion." *Gudgel*, 345 F.3d at 470 (citations omitted). And while Dr. Jan did examine Perkins, the only apparent inconsistencies between Dr. Jan's report and Dr. Sloan's reports are that Dr. Jan opined that Perkins had normal fine motor skills with normal handling of objects, whereas Dr. Sloan opined that Perkins was limited in being able to carry or lift objects, and could not reach. However, "a person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels*, 874 F.3d at 663 (alteration in original) (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001)). Thus, even if the ALJ did rely on Dr. Jan's report in discrediting Dr. Sloan's reports, such a determination would demonstrate a lack of understanding of Perkins's fibromyalgia. *Buttaccio*, 2017 WL 3895566, at *5 ("[I]t is crucial that the disability adjudicator evaluate credibility with great care and a proper understanding of the disease.").

Third, the ALJ erred in concluding that Dr. Sloan's reports were not credible because he did not prescribe a wheelchair for Perkins or see her on an emergency basis. Again, this demonstrates the ALJ's "fundamental misunderstanding of fibromyalgia." *Herrmann v. Berryhill*, No. 1:17-CV-56, 2017 WL 6523931, at *10 (N.D. Ind. Dec. 20, 2017). Perkins may not require a wheelchair or emergency care but still suffer from disabling levels of pain. *See*

*Kennedy v. Lilly Extended Disability Plan*, 856 F.3d 1136, 1139 (7th Cir. 2017) ("Fibromyalgia

is . . . characterized by chronic, widespread pain, fatigue, cognitive impairments, poor sleep, and

mood difficulties. . . . These symptoms . . . appear to undergo periods of exacerbation or

worsening, often colloquially referred to as flares by patients and their health care providers."

(alterations in original) (citation and internal quotation marks omitted)); *Buttaccio*, 2017 WL

3895566, at *5 (remanding a case where an ALJ ignored the "accepted notion" that fibromyalgia

"often produce[s] pain and other symptoms out of proportion to the objective medical evidence"

(alteration in original) (citation and internal quotation marks omitted)).

Furthermore, the ALJ impermissibly "substituted his own judgment" for that of a

physician without relying on a medical opinion or authority. *Boiles v. Barnhart*, 395 F.3d 421,

425 (7th Cir. 2005). "ALJs must not succumb to the temptation to play doctor and make their

own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)

(citations omitted). No medical source of record opined that if Perkins's condition was as severe

as Dr. Sloan described, that she would require emergency room visits or a wheelchair.

Therefore, in finding that Dr. Sloan's opinions were not credible because he did not prescribe her

a wheelchair or see her on an emergency basis, the ALJ impermissibly "played doctor." *See,*

*e.g., Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012) (remanding a case where the ALJ

determined that the claimant could perform sedentary work by elevating his foot 15 to 20

degrees, whereas the claimant's treating physician had opined that the claimant needed his foot

elevated to 90 degrees); *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) ("The inference

that [insulin] was not prescribed because Myles was not experiencing significant problems

appears to be the ALJ's own inference, and is wholly unsupported by the record.").

Finally, the ALJ was not permitted to reject all of the findings in Dr. Sloan's reports for

the reason that Dr. Sloan opined in his June 2014 report that Perkins could not work at all. It is

true that whether a claimant is able to work is an issue reserved to the ALJ. 20 C.F.R. §

404.1527(d); *see Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("[a]lthough a medical

opinion on an ultimate issue such as whether the claimant is disabled is not entitled to controlling

weight, the ALJ must consider the opinion and should recontact the doctor for clarification if

necessary." (citing SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996))). While the ALJ was

permitted to reject Dr. Sloan's conclusion as to whether Perkins was able to return to work, Dr.

Sloan's June 2014 and July 2015 reports contain more than conclusions as to whether Perkins is

able to work at all. The reports indicate that Perkins was limited in her ability to stand, walk, sit,

use her hands, lift, and carry objects. The ALJ did not cite evidence demonstrating that the

limitations assessed by Dr. Sloan were not credible. The ALJ "must 'evaluate all the evidence in

the case record to determine the extent to which the opinion is supported by the record.'" *Long*

*v. Comm'r Soc. Sec.*, No. 2:15-CV-408-JEM, 2017 WL 1161012, at *3 (N.D. Ind. Mar. 28,

2017) (quoting SSR 96-5p, 1996 WL 374183, at *3, 5 (July 2, 1996)). Thus, the ALJ's rejection

of Dr. Sloan's opinion that Perkins was completely unable to work did not serve as a basis to

reject Dr. Sloan's opinion with respect to Perkins's functional limitations.

"When an ALJ denies benefits, he must build an accurate and logical bridge from the

evidence to his conclusion . . . ." *Chase*, 458 F. App'x at 556-57 (citations and internal quotation

marks omitted). The ALJ must articulate which medical or treatment records "provide support

for [his] opinion" and not leave the Court guessing "whether there is support for the RFC

determination" or "fabricate [the RFC] out of whole cloth." *Betts*, 2016 WL 1569414, at *3; *see*

*Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). As discussed above, the ALJ's assignment

of "no weight" to Dr. Sloan's reports of June 24, 2014, and July 28, 2015, is not supported by

substantial evidence.  Thus, a remand is required for the ALJ to properly consider Dr. Sloan's reports in assigning Perkins's RFC.[4]

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.  The Clerk is directed to enter a judgment in favor of Perkins and against the Commissioner.

SO ORDERED.

Entered this 28th day of September 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[4] Because the Court finds that remand is warranted due to the ALJ's flawed analysis of Dr. Sloan's opinion in the RFC determination, the Court need not reach the remainder of Perkins's arguments.